571 So.2d 770 (1990)
STATE of Louisiana, Appellee,
v.
Freddie HENDERSON, Appellant.
No. 21901-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1990.
*771 Samuel Thomas, Tallulah, for appellant.
Asst. Dist. Atty. by George F. Fox, Jr., Lake Providence, for appellee.
LINDSAY, Judge.
The defendant, Freddie Henderson, appeals his convictions for second degree battery and attempted simple robbery. For the offense of second degree battery, the defendant was sentenced to serve five years at hard labor and to pay a fine of $2,000. In lieu of payment of the fine, the defendant was ordered to serve an additional twelve months in jail. For the offense of attempted simple robbery, the defendant was sentenced to three and one-half years at hard labor and to pay a fine of $1,500. In lieu of payment of the fine, the defendant was ordered to serve an additional twelve months in jail. The sentences were ordered to be served consecutively. For the following reasons, we affirm the defendant's convictions, but reverse and vacate that portion of the defendant's sentences requiring him to serve jail time in lieu of payment of his fines.

FACTS
On August 31, 1987, at approximately 10:30 a.m., the victim and her husband stopped at a convenience store in Lake Providence, Louisiana. The victim went to the ladies' room. As the victim was leaving the restroom, she was attacked by a black male who knocked her to the floor. The attacker severely beat and kicked the victim about the face and took her wallet from her purse. The wallet contained several *772 credit cards and some change. The victim screamed for help throughout the attack. The attacker fled the scene.
The victim stated the attacker was wearing a blue pullover shirt with a distinctive orange design. Another customer of the store, Timothy Baxter, observed a black male fleeing from the convenience store. The man was wearing a blue shirt with an orange design.
Law enforcement officials were alerted. The local sheriff was in the vicinity of the convenience store and responded within a few seconds. Timothy Baxter, who saw the fleeing assailant, got in the sheriff's vehicle. Baxter and the sheriff followed the man, who was later determined to be the defendant, Freddie Henderson, to a mobile home. Other law enforcement officials responded and the trailer was surrounded.
Upon observing the officers, the defendant began shouting obscenities at them and stated they were not going to arrest him. One deputy, J.O. Thornton, went to the rear of the mobile home to cover the back door. While at the rear of the trailer, Deputy Thornton noticed a storage building with an open door. Inside the doorway of the building Thornton observed a wet, blue pullover shirt with the distinctive orange design described by the victim and Timothy Baxter. A wet pair of socks was also found. These items were seized by Deputy Thornton.
The defendant was placed under arrest. At the time of his arrest, the defendant was not wearing a shirt.
The defendant was charged by bill of information with one count of second degree battery and one count of simple robbery. The defendant was subsequently tried before a six-person jury and found guilty of second degree battery and attempted simple robbery.
On December 4, 1989, the defendant was sentenced to serve five years at hard labor for second degree battery. He was also ordered to pay a fine of $2,000 or in lieu of payment of the fine, to serve an additional 12 months in jail. On the charge of attempted simple robbery, the defendant was ordered to serve three and one-half years at hard labor. He was also ordered to pay a fine of $1,500, or in lieu of payment of the fine, to serve an additional 12 months in jail. The sentences, including default time for nonpayment of the fines, were ordered to be served consecutively.
The defendant appealed, arguing numerous assignments of error.

PEREMPTORY CHALLENGES
The defendant argues that the trial court erred in allowing the prosecution to use peremptory challenges to remove blacks from the jury during voir dire examination. The defendant, who is black, claims he was tried by an all white jury. He argues that the state used peremptory challenges to remove potential black jurors from the jury venire in contravention of LSA-C.Cr.P. Art. 795. This article prohibits the use of peremptory challenges by the state based solely on race. The defendant's argument is meritless.
LSA-C.Cr.P. Art. 795 provides that a peremptory challenge by the state shall not be based solely upon the race of the juror. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), also prohibits the exclusion of prospective jurors solely on the basis of race. However, in order to preserve the complaint that the prosecutor's use of a peremptory challenge was based on race, the defense must make an objection before the entire jury panel is sworn. LSA-C.Cr.P. Art. 841. State v. Williams, 524 So.2d 746 (La.1988); State v. White, 535 So.2d 929 (La.App. 2d Cir.1988), writ denied 537 So.2d 1161 (La.1989). In the present case, the record shows that the defense never made any objection whatsoever to the state's use of its peremptory challenges. Therefore, an objection cannot now be considered on appeal.
In fact, other than the assertions made by the defendant in his brief, there is nothing in the record to show that the potential jurors excluded by the state's peremptory challenges were black. Nor does the record show that the jury actually empaneled was, in fact, all white.
*773 However, even if such an objection was properly before this court, the record reveals racially neutral explanations for the state's use of the peremptory challenges of which the defendant complains. One of the prospective jurors, Emma Bell, knew the defendant's family. Another prospective juror, Theodore Lane, stated during voir dire examination that he had known the defendant since the defendant was in junior high school. The prospective juror was also acquainted with the defendant's family.
Based upon the record before this court, we find no error in the prosecution's use of peremptory challenges to excuse these prospective jurors. This assignment of error has no merit.

CHALLENGES FOR CAUSE
The defendant argues that the trial court erred in refusing to excuse for cause two prospective jurors. One of the prospective jurors, Mrs. Johnnie Grossman, had once been the victim of a robbery. The other prospective juror, Mrs. Sandi Matthews, was married to a former deputy sheriff. The defendant's arguments concerning challenges for cause as to these prospective jurors are meritless.
LSA-C.Cr.P. Art. 797 provides that the state or the defendant may challenge a juror for cause on several grounds. The trial court is given wide discretion in ruling on challenges for cause and a ruling will not be disturbed absent a showing of abuse of discretion. State v. Hall, 549 So.2d 373 (La.App. 2d Cir.1989); writ denied 556 So.2d 1259 (La.1990); State v. Parker, 506 So.2d 675 (La.App. 5th Cir.1987).
It is not error to refuse to excuse for cause a prospective juror who has been the victim of a robbery when questioning shows that the juror could be impartial. State v. Demouchet, 353 So.2d 1025 (La. 1977).
In the present case, which is similar to State v. Demouchet, supra, Mrs. Grossman, who had previously been the victim of a burglary, demonstrated on voir dire examination that, in spite of that fact, she would not be biased against the defendant, who was accused of a crime of misappropriation. Mrs. Grossman clearly stated that her past experiences would not interfere with her ability to view the law and evidence impartially in arriving at a verdict. The record does not indicate that the trial court erred in accepting Mrs. Grossman's statement and in denying the defendant's challenge for cause.
The defendant also challenged for cause Mrs. Sandi Matthews on the ground that she was married to a former East Carroll Parish deputy sheriff. Voir dire examination revealed that Mrs. Matthew's husband was not involved in the investigation of the present case, and was no longer employed as a deputy. Further, Mrs. Matthews' husband had ceased to be a deputy sheriff prior to their marriage.
Where a challenge for cause is based on the juror's relationship with law enforcement officials, the situation requires close scrutiny, but does not automatically disqualify the potential juror. State v. Jackson, 548 So.2d 57 (La.App. 3rd Cir. 1989); State v. Parker, supra. Only where the relationship leads to the reasonable conclusion that the juror would be influenced in arriving at a verdict should a challenge for cause be granted. State v. Comeaux, 514 So.2d 84 (La.1987); State v. White, 535 So.2d 929 (La.App. 2d Cir.1988), writ denied 537 So.2d 1161 (La.1989).
In the present case, the voir dire examination of Mrs. Matthews supports the trial court's conclusion that this prospective juror could be impartial, even though her husband was formerly employed by the sheriff's department. The trial court did not err in denying the defendant's challenge for cause as to Mrs. Matthews.[1]

*774 MOTION TO SUPPRESS
Prior to the trial on the merits, the defendant filed a motion to suppress evidence seeking to block the introduction into evidence of the shirt and socks recovered behind his residence. The defendant argues that these items were seized incident to a warrantless search of his premises and that the items were not found in plain view. These arguments are meritless.
LSA-C.Cr.P. Art. 703 provides that a defendant may move to suppress evidence on the ground that it was unconstitutionally obtained. A search and seizure conducted without a properly issued search warrant, based upon probable cause, is per se unreasonable, subject to established exceptions. State v. Raheem, 464 So.2d 293 (La.1985); State v. Gervais, 546 So.2d 215 (La.App. 4th Cir.1989).
A warrantless search and seizure at a private residence, though per se unreasonable, may be justified under one of the narrow exceptions to the warrant requirement of the Constitution of the United States and the Constitution of Louisiana. State v. Lyons, 514 So.2d 558 (La.App. 4th Cir.1987); State v. Hathaway, 411 So.2d 1074 (La.1982).
Exceptions occur when law enforcement officials enter a residence under "exigent circumstances", such as to prevent the escape of the defendant or to prevent the destruction of evidence. State v. Lyons, supra.
As stated in Horton v. California, ___ U.S. ___, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) evidence discovered in "plain view" may be admitted if certain conditions are met:
It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be "immediately apparent.".... Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself. [Footnote omitted]
In the present case, the law enforcement officials were in "hot pursuit" of the defendant and were therefore justified in entering upon his property to prevent his escape. Deputy Thornton was justified in going to the rear of the mobile home to ensure that the defendant did not try to flee through the back door. While lawfully in that position, Deputy Thornton saw, lying in the doorway of an open out-building, a pair of socks and a shirt that matched the description of that worn by the assailant. In order to prevent destruction of this evidence, Deputy Thornton was justified in seizing the shirt and socks. As noted by the trial court, these items were observed in plain view through an open door of the building and the officer had only to reach inside the door to seize the items.
The facts of the present case are similar to those in State v. Johnson, 519 So.2d 212 (La.App. 5th Cir.1988), writ denied 523 So.2d 1334 (La.1988). In that case, the defendant shot his victim as the victim ran down the street. Bystanders observed that the defendant was wearing a burgundy sweatshirt with cut off sleeves and an insignia. Police pursued the defendant to a residence where he was apprehended. They observed the burgundy sweatshirt on a bed in the room where the defendant was arrested. The court found the police officers were justified in seizing the shirt without a warrant. The court reasoned that the shirt was in plain view and there were sufficient exigent circumstances to enable the police officers to seize the shirt since they were faced with the possibility of destruction of this important piece of evidence.
*775 In the present case, the trial court correctly determined that the items which were seized were in plain view. The seizure of these items fall with the plain view exception to the warrant requirement. Therefore, the trial court did not err in overruling the defendant's motion to suppress the shirt and socks.

SUFFICIENCY OF EVIDENCE
The defendant asserts that the evidence presented by the prosecution was insufficient to support the convictions for second degree battery and attempted simple robbery. These arguments are without merit.
LSA-R.S. 14:34.1 defines second degree battery as:
... a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty, or substantial risk of death.
LSA-R.S. 14:65 defines simple robbery as:
... the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation, but not armed with a dangerous weapon.
An attempt to commit a crime is defined in LSA-R.S. 14:27 as follows:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of or tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended, and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
In reviewing the sufficiency of evidence to support a conviction, the reviewing court must examine the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984).
Although LSA-R.S. 15:438 provides that when circumstantial evidence is used to convict, every reasonable hypothesis of innocence must be excluded, this statutory rule is not a separate test from the Jackson standard and does not establish a stricter standard of review in circumstantial evidence cases. Rather, all the evidence, both direct and circumstantial, must be sufficient under the Jackson standard to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985); State v. McKnight, 539 So.2d 952 (La.App. 2d Cir.1989), writ denied 548 So.2d 322 (La.1989); State v. Arrington, 514 So.2d 675 (La.App. 2d Cir.1987).
Physical evidence shows that a second degree battery was carried out against the victim. The victim was severely beaten and kicked in the face. She suffered numerous bruises and had to have five stitches in her face. In addition, the victim's nose was broken and required reconstructive surgery in order to allow her to breath normally. The victim testified that she has been disfigured and that further cosmetic surgery will be required.
The victim also testified that her assailant took her wallet which contained several credit cards. The victim's purse was found lying on the floor of the ladies' room. The victim's wallet was never recovered.
These facts establish the crimes of second degree battery and attempted simple robbery. The defendant does not contend that the offenses did not actually occur.
The defendant argues that the shirt and socks recovered behind his residence had no blood on them. Also, the defendant claims that the victim's wallet, which was allegedly taken from her purse during the attack, was never recovered. He also contends that the eye witness identification *776 made by Timothy Baxter was in error. He therefore contends that the evidence is insufficient to support the convictions. We disagree.
The victim stated that she could not identify the assailant, largely because during the attack, she was being kicked in the face. However, she did state that the assailant was wearing a blue pullover shirt with a distinctive orange design.
Timothy Baxter testified that he saw the defendant fleeing the scene wearing a blue shirt with a distinctive orange design. Law enforcement officials followed the defendant to his residence and found the defendant, in his residence, shirtless. A blue pullover shirt with an orange design was found behind the defendant's residence shortly after the crime took place. The victim and Timothy Baxter identified the shirt as being the one worn by the defendant.
Timothy Baxter, the eyewitness, positively identified the defendant as the person who fled the crime scene. Both Baxter and the victim testified that the assailant was wearing a shirt with a distinctive orange design. They both identified the shirt found behind the defendant's residence only minutes after the crime, as being the shirt worn by the assailant. These facts constitute sufficient evidence to prove beyond a reasonable doubt that this defendant was the person who committed the second degree battery and attempted simple robbery.
This assignment of error has no merit.

ASSIGNMENT NOT ARGUED
In his assignments of error, the defendant argues that the trial court erred in allowing one of the law enforcement officials to offer hearsay testimony. However, the defendant did not argue or brief this assignment of error. Therefore, this assignment of error is deemed to be abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA Rule 2-12.4; State v. Dewey, 408 So.2d 1255 (La.1982).

ERROR PATENT
We note that in sentencing this defendant, the court imposed the maximum possible penalties of incarceration and fines available under the statutes. Under LSA-R.S. 14:34.1, the maximum penalty for second degree battery is five years, with or without hard labor, and a fine of $2,000. For the offense of second degree battery, the defendant was sentenced to serve five years at hard labor and to pay a fine of $2,000. In default of payment of the fine, the defendant was ordered to serve an additional 12 months in jail.
Under LSA-R.S. 14:27 and R.S. 14:65, the maximum penalty for attempted simple robbery is three and one-half years, with or without hard labor, and a fine of $1,500. For this offense, the defendant was ordered to serve three and one-half years at hard labor and to pay a fine of $1,500. In default of payment of the fine, the defendant was ordered to serve an additional 12 months in jail. All sentences, including the periods to be served in lieu of payment of fines, were ordered to be served consecutively.
We note that the record shows that this defendant is indigent. An oath of indigency is contained in the record and counsel was appointed to represent the defendant throughout these proceedings. In State v. Lukefahr, 363 So.2d 661 (La.1978), cert. denied 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979), the Louisiana Supreme Court held, based on Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), that in the case of an indigent defendant, it is impermissible to impose a prison term in lieu of payment of a fine that would result in the defendant serving a longer term than the statutory maximum for the offense. Cf. State v. Coon, 475 So.2d 33 (La.App. 2d Cir.1985); State v. Tomlin, 478 So.2d 622 (La.App. 2d Cir. 1985).
In this case, the defendant is indigent. The imposition of default time in lieu of payment of the fines would cause the defendant to be incarcerated for a longer period that the statutory maximum imposed for his offenses. Therefore, we vacate *777 that portion of the defendant's sentences which require him to serve jail time in lieu of payment of the fines imposed.[2]

CONCLUSION
For the reasons stated above, we affirm the convictions of the defendant, Freddie Henderson.
We affirm that portion of the defendant's sentences ordering him to serve five years at hard labor and to pay a fine of $2,000 for the offense of second degree battery and to serve a term of three and one-half years at hard labor and to pay a fine of $1,500 for the offense of attempted simple robbery. We reverse and vacate that portion of the defendant's sentences ordering him to serve 12 months in jail in lieu of payment of the fine for second degree battery and to serve 12 months in jail in lieu of payment of the fine for the offense of attempted simple robbery.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART, REVERSED AND VACATED IN PART.
NOTES
[1] The defendant argues that the court should have excused Mrs. Matthews for cause under LSA-C.Cr.P. Art. 797(3) which allows challenges for cause based upon close relationships between the prospective juror and the defendant, victim, district attorney, or defense counsel. A law enforcement officer is not included under LSA-C.Cr.P. Art. 797(3). However, if a relationship created bias on the part of the prospective juror, it could give rise to a challenge under LSA-C.Cr.P. Art. 797(2), dealing with lack of impartiality. State v. Robertson, 511 So.2d 1237 (La.App. 2d Cir.1987), writ denied 516 So.2d 366 (La.1988).
[2] As stated above, it is well settled in our jurisprudence that, in the case of an indigent defendant, it is impermissible to impose a prison term in lieu of payment of a fine when to do so will result in the defendant serving longer than the statutory maximum for the offense. However, this is distinguishable from our holdings in State v. Lewis, 506 So.2d 562 (La.App. 2d Cir.1987); State v. Bezzard, 506 So.2d 565 (La. App. 2d Cir.1987); State v. Taylor, 512 So.2d 663 (La.App. 2d Cir.1987); and State v. Perkins, 514 So.2d 503 (La.App. 2d Cir.1987). These cases considered whether default time could be imposed for nonpayment of fines where the combined penalty and default time do not exceed the statutory maximum penalty for the offenses upon which the convictions were based. In those cases we held that the question of indigency must be determined at the time the defendant is called upon to pay the fine. If he is found to be indigent, then an alternative sanction is to be found to default time for nonpayment of the fine.